D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                     :
PAUL BARBARA, DIANE KENNEY, ANGELA               :       12-CV-0368 (ARR)(RER)
CHIANESE, and MATTHEW BARBARA,                   :
                                                                     :       NOT FOR ELECTRONIC
                    Plaintiffs,                  :       OR PRINT PUBLICATION
                                                                     :
       -against-                                 :       OPINION AND ORDER
                                                                     :
MARINEMAX, INC., WILLIAM H. MCGILL, JR.,         :
MICHAEL H. MCLAMB, MICHAEL AIELLO, and           :
ROBERT S. KANT,                                  :
                                                                     :
                    Defendants.                  :
                                                                     :
------------------------------------------------------------------- X

ROSS, United States District Judge:

       Plaintiffs brought this action asserting breach of contract and a number of subsidiary

claims stemming from the 2006 sale of a boat business for cash and stock. At issue in the case is

when, if at all, defendants were obligated to act to lift restrictions on the stock certificates in

order to permit sale of the stock. In an opinion and order dated December 3, 2012, the court

dismissed all of plaintiffs' claims except for breach of contract. The court also dismissed

plaintiffs' fraud claims without prejudice, and granted leave to replead within thirty days.

Plaintiffs subsequently filed a second amended complaint, reasserting their breach of contract

claim and including three new fraud claims. Defendants now move to dismiss the fraud claims.

Plaintiffs meanwhile appeal an order of Magistrate Judge Ramon E. Reyes denying their motion

to compel certain documents in discovery. For the reasons discussed below, defendants' motion

to dismiss is granted and plaintiffs' appeal from Judge Reyes's order is denied.

## BACKGROUND

The court assumes familiarity with the facts discussed in the December 3, 2012 opinion and order ("Op. & Order"), Dkt. #28.  Briefly, plaintiffs contracted with defendants for the sale of a boat business in exchange for cash and restricted stock.  Second Amend. Compl. ¶ 18-20. Plaintiffs believed the restrictions on the stock were due to be lifted one year after the execution of the contract, on April 1, 2007.  Id. ¶ 47.  However, the restrictions were not lifted on April 1, 2007, and were not ultimately lifted until August 12, 2009.  Id. ¶ 55.  The court previously held that plaintiffs' allegation that defendants failed to lift the stock restrictions was sufficient to state a claim for breach of contract.  Op. & Order 35.  The court dismissed plaintiffs' fraud claim for lack of specificity, but granted leave to replead.  Id. 40-41.  In their second amended complaint, plaintiffs allege several new facts that they argue support a claim of fraud.[1]

First, plaintiffs allege that in late January and February 2007, Toni Srour, a representative of Bear Stearns who was "acting on behalf of" plaintiffs, Second Amend. Compl. ¶ 31, and Robert Kenney, husband of one of the plaintiffs, exchanged several emails with defendant Robert S. Kant ("Kant"), a board member of, and outside general counsel to, MarineMax.  Id. ¶¶ 15, 31-36.  The purpose of these emails was to ensure that all the legal requirements had been met to allow the stock restrictions to be lifted on April 1, 2007.  Id. ¶ 31.  Plaintiffs allege that Kant told plaintiffs to have a transfer agent submit a "formal request."  Id. ¶ 32.[2]  Subsequently, the transfer

---

[1]All of these facts occurred prior to the April 1, 2007 date.  Plaintiffs concede that after that date came and went, they continued to rely on defendants' assurances and "chose not to pursue litigation," Second Amend. Compl. ¶ 48, until they commenced this lawsuit nearly five years later, see Dkt. 1.

[2]In addition to the allegations set forth in their second amended complaint, plaintiffs also provide copies of the emails in question with their memorandum of law opposing defendants'

2

agent contacted Kant by telephone, but he did not return the call. Id. ¶ 33. When Robert Kenney asked Kant, by email, to contact the transfer agent, Kant replied, "I have received nothing in writing from the transfer agent. They have not tried to contact me numerous times. I want a WRITTEN request." Id. ¶ 35. By a separate email sent to Toni Srour on the same day, Kant told Srour he would provide an opinion permitting the stock restrictions to be lifted upon receipt of a "written request from the transfer agent." Id. ¶ 36. Plaintiffs allege that "[i]n telephone calls on or around the same date, Kant told Srour that a written request was a prerequisite to his provision of the Opinion." Id. ¶ 37. In response to this request, the transfer agent told Bear Stearns that it had never submitted, nor ever been asked to submit, a written request and that "Kant's representations were inaccurate and his requests were bizarre and unwarranted." Id. ¶ 38. Plaintiffs aver that no written request was in fact needed and therefore, they allege, Kant's representations were false. Id. ¶¶ 39, 70-73.

Second, plaintiffs allege that, based on their stalled progress with Kant, they contacted MarineMax CEO William H. McGill, Jr. ("McGill") and CFO Michael H. McLamb ("McLamb"). Id. ¶ 40. McGill and McLamb each allegedly promised he would contact Kant "to ensure that Kant provided the Opinion and otherwise took all necessary steps to ensure the restrictions were lifted in a timely fashion." Id. ¶¶ 42, 45, 76. But, plaintiffs allege, McGill and McLamb "did not ensure that Kant provided the Opinion and otherwise took all necessary steps to ensure the restrictions were lifted." Id. ¶ 78 (emphasis added). Accordingly, plaintiffs contend, McGill and McLamb's statements were misrepresentations. Id. ¶¶ 80-81.

---

motion to dismiss. See Decl. of Peter R. Ginsberg ("Ginsberg Decl.") Ex. A.

Third, on or about February 5, 2007, plaintiff Matthew Barbara contacted McLamb to discuss whether someone other than Kant could provide the opinion needed to lift the stock restrictions. Id. ¶ 49. Plaintiffs allege that "McLamb represented to Matthew Barbara that the Opinion had to be issued by Kant and could not be obtained from a third-party, such as counsel hired by" plaintiffs. Id. ¶ 50. Plaintiffs further allege that "[u]pon information and belief," McLamb obtained this information from Kant. Id. ¶ 51. However, there was in fact "no requirement that the issuer, in this case MarineMax, provide the Opinion."[3] Id. ¶ 52. Plaintiffs therefore allege that these representations were false. Id. ¶ 86.

Defendants now move to dismiss plaintiffs' fraud claims. Plaintiffs also appeal from a discovery order of Magistrate Judge Reyes, Dkt. #43, which is discussed in more detail below.

## DISCUSSION

I.      Motion to Dismiss

        a.      *Standard of Review*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Only a "plausible claim for relief survives a motion to dismiss." LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 476 (2d Cir. 2009). "A claim has facial

---

[3]The court discussed this issue at length in its opinion and order. Op. & Order at 22-23, 34-35.

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Under Rule 9(b), "a party [alleging fraud or mistake] must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To survive a motion to dismiss under this heightened standard, a complaint alleging fraud must "allege facts that give rise to a strong inference of fraudulent intent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). An inference of fraudulent intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. "[M]ere general allegations that there was fraud, corruption or conspiracy or characterizations of acts or conduct in these terms are not enough [to survive a Rule 9(b) motion] no matter how frequently repeated." Segal v. Gordon, 467 F.2d 602, 607 (2d Cir. 1972) (internal quotation marks omitted).

  b. *Materials That May be Considered on a Motion to Dismiss*

Normally a district court's analysis of a motion to dismiss is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, when deciding a motion to dismiss, the court may also consider:

5

> (1) facts alleged in the complaints and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may be properly taken under Rule 201 of the Federal Rules of Evidence.

Eaves v. Designs for Fin., Inc., 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (alteration in original)

(quoting Weiss v. Inc. Vill. of Sag Harbor, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)).

Here, plaintiffs have submitted excerpts from the email correspondence between Kant

and Toni Srour and Kant and Robert Kenney. See Ginsberg Decl. Ex. A. These emails are

referenced throughout the second amended complaint. See ¶¶ 31-36, 69. Defendants protest

these emails are "cherry-pick[ed]" (though they do not dispute their accuracy), and urge the court

to exclude consideration of them. Reply Mem. of Law in Further Supp. of Defs.' Mot. to

Dismiss the Second, Third, and Fourth Claims for Relief ("Reply Mem.") 1 & n.2. Although the

emails were not attached to the second amended complaint, they are both incorporated by

reference and integral to and relied upon in the complaint. Therefore, the court will consider

them in deciding the motion to dismiss. See Pilchman v. Am. Fed'n of State, County & Mun.

Emps., No. 10 CV 4976(KMW), 2011 WL 4526455, at *4 (S.D.N.Y. Sept. 29, 2011)

(considering emails incorporated by reference in complaint); Eaves, 785 F. Supp. 2d at 246

(considering letters referenced in, but submitted outside, complaint alleging fraud); JP Morgan

Chase Bank v. Winnick, 406 F. Supp. 2d 247, 254 (S.D.N.Y. 2005) (considering emails

referenced in complaint in determining sufficiency of fraud claim).

c.    *Governing Legal Principles*

To state a claim for fraud, plaintiffs must allege: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).  Under New York law, "a claim for fraud may lie even when a defendant does not make the statement directly to the plaintiff, but only if (1) the plaintiff received the information from someone who had received it from the defendant, and (2) the defendant intended the misrepresentation to be conveyed to him." Eaves, 785 F. Supp. 2d at 251.

With respect to reliance, usually, "[c]laims that reliance was in some way unjustified might, if proven, constitute a defense, but it does not impair the sufficiency of the complaint." Amusement Indus., Inc. v. Stern, 786 F. Supp. 2d 758. 775 (S.D.N.Y. 2011) (internal quotation marks omitted).  However, "'courts have granted motions to dismiss because of a failure to adequately plead reasonable reliance . . . [in] situations where a plaintiff failed to examine readily available information, relied on oral representations of information when it could easily have asked for additional information, or failed to properly investigate a transaction.'" Id. (quoting Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007)).  "Where the representation relates to matters that are not peculiarly within the other party's knowledge and both parties have available the means of ascertaining the truth," New York courts hold that reliance is unjustifiable because "the complaining party should have discovered the facts." Royal Am. Managers, Inc. v. IRC Holding Corp., 885 F.2d 1011, 1016 (2d Cir. 1989).  Courts impose a more stringent standard on sophisticated parties than others, "holding that they have a duty to

7

obtain available information . . . once put on notice of the existence of such information."
Mushahada Int'l USA, Inc. v. Access Point, Inc., No. 04 CV 5270(ARR), 2005 WL 1421620, at
*4 (E.D.N.Y. June 17, 2005) (citing Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d
1531, 1543 (2d Cir. 1997)).

Finally, in addition to allegations of fraud, this case involves a breach of contract claim
for defendants' failure to lift the stock restrictions. Defendants argue that at least some of the
fraud claims are duplicative of this breach of contract claim. "[W]here a fraud claim 'is premised
upon an alleged breach of contractual duties and the supporting allegations do not concern
representations which are collateral or extraneous to the terms of the parties' agreement, a cause
of action sounding in fraud does not lie.'" Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,
Inc., 98 F.3d 13, 20 (2d Cir. 1996) (quoting McKernin v. Fanny Farmer Candy Shops, Inc., 574
N.Y.S.2d 58, 59 (App. Div. 1991)).

> To maintain a claim of fraud in such a situation, a plaintiff must either: (i)
> demonstrate a legal duty separate from the duty to perform under the contract; or
> (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the
> contract; or (iii) seek special damages that are caused by the misrepresentation and
> unrecoverable as contract damages.

Id. (internal citations omitted).

    d.    *Application to Plaintiffs' Fraud Claims*

        1.    Kant's statements regarding requirements for issuing the opinion
                (Second Claim for Relief)

Plaintiffs cannot maintain a fraud claim against Kant for his statements regarding the
legal requirements for issuing the opinion because any reliance on Kant was unjustifiable.

8

First, Kant possessed no "peculiar[]" knowledge, <u>Royal Am. Managers, Inc.</u>, 885 F.2d at 1016, regarding the legal preconditions for lifting the stock restrictions. As the court noted in its previous opinion and order, defendants had no "superior knowledge" about the legal requirements governing the stock restrictions, and there was "no reason to suppose, based on the facts alleged, that plaintiffs were unsophisticated or that information about these requirements was not readily available." Op. & Order 40 (internal quotation marks omitted). To the contrary: plaintiffs allege that they negotiated with defendants over the holding period for the stock restriction, and ultimately succeeded in pushing defendants to agree to a one-year period. Second Amend. Compl. ¶¶ 22-23. In addition, to the extent plaintiffs were ignorant of governing legal requirements, they had the benefit of representatives of Bear Stearns "acting on [their] behalf." <u>Id.</u> ¶ 31. "When plaintiffs are sophisticated parties and the statement relates to a business transaction memorialized in the contract, New York courts are reluctant to find reliance on oral communications to be reasonable." <u>Matsumura v. Benihana Nat'l Corp.</u>, 542 F. Supp. 2d 245, 257 (S.D.N.Y. 2008); <u>see id.</u> (holding reliance on adversary's attorney's statements unreasonable where the parties negotiated terms of a "complex, comprehensive and fully integrated contract," and, during negotiations, plaintiffs drew attention to very issue raised in fraud claim). Given plaintiffs' level of sophistication and their representation by Bear Stearns, it is inconceivable that they could reasonably rely on Kant's oral representations regarding issues they had already negotiated in a complex, fully integrated asset purchase agreement.

Second, Kant was at all relevant times <u>defendants'</u> outside counsel and a member of the MarineMax Board of Directors. Second Amend. Compl. ¶ 15. "Courts have routinely held that it is unreasonable for a party 'to rely on the advice of adversary counsel . . . when both parties are

9

aware that adverse interests are being pursued.'" Id. (alteration in original) (quoting Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993)). Here, Kant was plainly representing the interests of MarineMax, not of plaintiffs. The emails plaintiffs submitted along with their motion papers bear this out: In response to an email from Toni Srour at Bear Stearns, Kant wrote on February 1, 2007, "Toni, I do not represent your clients." Ginsberg Decl. Ex. A. Accordingly, any belief that Kant was representing plaintiffs' interests was unreasonable as a matter of law. See Matsumura, 542 F. Supp. 2d at 257 (reliance on adversary's attorney's statements unreasonable where attorney told plaintiffs he "could not represent them").

The court is further convinced that plaintiffs could not (and did not) reasonably rely on Kant's statements based on their allegations and the emails attached to their motion papers. The emails show a pattern of Kant refusing to take or return plaintiffs' representatives' phone calls. Ginsberg Decl., Ex. A. An employee at Bear Stearns told plaintiffs in an email on October 31, 2006, that Kant was "in avoidance phase and not taking our call[s] . . . . This is not an ideal situation given what you want to do quickly." Id. The same employee complained to Robert Kenney that Kant was "being difficult" in an email dated January 26, 2007. Id. Another email responding to the transfer agent's inability to get Kant to take their calls stated, "What should my clients be doing now???? looks like things are getting Ridiculous with this clown[.]" Id. The transfer agent also informed Bear Stearns that "Kant's representations were inaccurate and his requests were bizarre and unwarranted." Second Amend. Compl. ¶ 38. Reliance on misrepresentations is not justified where "plaintiff was placed on guard or practically faced with the facts." Royal Am. Managers, Inc., 885 F.2d at 1016 (internal quotation marks omitted).

10

Here, faced with Kant's refusal to cooperate and clear advice that his representations were "inaccurate," as well as "bizarre," any reliance on his statements by plaintiffs was unreasonable.[4]

Kant's statements by email and telephone regarding the requirements necessary for lifting the stock restrictions consequently cannot form the basis for a fraud claim.

> 2. McGill and McLamb's statements that they would follow up with Kant and ensure the restrictions would be lifted (Third Claim for Relief)

Plaintiffs cannot maintain fraud claims against McGill and McLamb for their promises to follow up with Kant and ensure the stock restrictions would be lifted, because these statements amounted to no more than a promise to perform under the contract. As such, they are duplicative of the breach of contract claim. See Bridgestone/Firestone, Inc., 98 F.3d at 19 ("intentionally-false statements" indicating "intent to perform under the contract . . . [are] not sufficient to support a fraud claim under New York law"); see also Ikea N. Am. Servs. Inc. v. Ne. Graphics, Inc., 56 F. Supp. 2d 340, 342 (S.D.N.Y. 1999) ("[E]ven intentionally misleading statements by a defendant falsely indicating an intent to perform under a contract and/or concealing a breach of the contract do not give rise an action for fraud.").

As the Second Circuit has explained in Bridgestone/Firestone, Inc., a plaintiff can only maintain a fraud claim premised on the same facts as a breach of contract claim where (i) there is some separate legal duty from the duty to perform under the contract; (ii) defendants make a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) plaintiffs seek special damages caused by the misrepresentation that are not recoverable on the contract. Id. at

---

[4]Further, even if plaintiffs did rely on Kant's representations, such reliance was plainly unreasonable after the April 1, 2007 deadline came and went without the restrictions being lifted.

11

20. This court has already ruled that defendants owed no independent fiduciary duty to plaintiffs, Op. & Order 14-24, so the first situation does not apply. With regard to special damages, plaintiffs seek punitive damages for defendants' "willful and wanton conduct." Second Amend. Compl. ¶ 92. Plaintiffs do not, however, state a claim for punitive damages for fraud, since they allege no facts to suggest that defendants engaged in a fraud "'aimed at the public generally,' evincing a 'high degree of moral turpitude,' and demonstrating 'such wanton dishonesty as to []imply a criminal indifference to civil obligations," Koch v. Greenberg, No. 07 Civ. 9600(BSJ)(DF), 2008 WL 4778813, at *5 (S.D.N.Y. Oct. 31, 2008) (quoting Walker v. Sheldon, 179 N.E.2d 497, 499 (N.Y. 1961)). Accordingly, the third situation does not apply.

The question is whether defendants made a fraudulent misrepresentation collateral or extraneous to the contract. Plaintiffs do allege one such misrepresentation: McLamb's statement that only Kant could issue an opinion letter lifting the stock restrictions. Plaintiffs claim this statement was false because "there is no requirement that the issuer, in this case MarineMax, provide the Opinion." Second Amend. Compl. ¶ 52. This is not entirely accurate. As the court noted in its previous opinion and order, under Delaware law, any "counsel" can provide the necessary opinion letter to lift stock restrictions. Op. & Order 23. But it is not clear under New York law (which governs the fraud claim) whether a plaintiff can cure refusal by the issuer's counsel to provide an opinion letter by obtaining a letter from counsel of her own. See id. 34. Moreover, even if plaintiffs could have obtained a letter from another attorney, defendants did not necessarily have to accept that letter. See Catizone v. Memry Corp, 897 F. Supp. 732, 736 n.3 (S.D.N.Y. 1995) ("Plaintiff argues that a genuine issue of fact exists regarding whether his counsel's opinion letter was sufficient."). The restrictive legend on the stock certificates

12

themselves indicates that the restrictions could be lifted only upon "receipt of an opinion of

counsel satisfactory in form and substance to the issuer." Januszewski Aff. Ex. B (emphasis

added). It is possible that the parties understood that the only opinion of counsel satisfactory to

MarineMax was Kant's opinion.[5] McLamb's statement would therefore be true.

However, even if McLamb's statement were false, plaintiffs still could not have

reasonably relied on it, since McLamb – CFO of MarineMax and a nonlawyer – possessed no

specialized knowledge about securities law.[6] Again, as the Second Circuit has held, "[w]here the

representation relates to matters that are not peculiarly within the other party's knowledge and

both parties have available the means of ascertaining the truth," reliance is unjustifiable. Royal

Am. Managers, Inc., 885 F.2d at 1016. Accordingly, the second situation contemplated in

Brookstone/Firestone, Inc. does not obtain here. Plaintiffs' fraud claim against McGill and

McLamb consequently amounts to no more than a duplication of their breach of contract claim.[7]

---

[5]This possibility was part of the basis for sustaining plaintiffs' breach of contract claim. See Op. & Order 35.

[6]Furthermore, similarly to Kant, any reliance on McGill and McLamb's promises to ensure the stock restrictions would be lifted by April 1, 2007, necessarily became unreasonable after that date passed without the restrictions being lifted.

[7]Plaintiffs place heavy reliance on Vtech Holdings Ltd. v. Lucent Techs., Inc., 172 F. Supp. 2d 435 (S.D.N.Y. 2001), and TVT Records v. Island Def Jam Music Grp., 244 F. Supp. 2d 263 (S.D.N.Y. 2003), for the argument that McGill and McLamb's statements were misrepresentations of present facts, rather than promises to perform under the contract. But as defendants correctly point out, these cases are inapposite. Vtech Holdings Ltd. sustained a fraud claim in addition to a breach of contract claim where the fraud induced plaintiffs to enter the contract. 172 F. Supp. 2d at 440. In TVT Records, the court held the fraud claims were not simply "dressed up" breach of contract claims because plaintiff's claim was of an overall fraudulent scheme, in the course of which a putative contract was utilized. 244 F. Supp. 2d at 276-77. Accordingly, the fraud claims were not redundant. Id. at 277. Here, plaintiffs nowhere allege fraud in the inducement or that the contract was part of an overall scheme by defendants solely to defraud them. These cases do not help their cause.

13

3.    McLamb and Kant's statements that only Kant could provide the necessary opinion
(Fourth Claim for Relief)

For the reasons discussed in Parts I(d)(1) and (2), above, plaintiffs could not have reasonably relied on the statements of either McLamb or Kant that Kant was the only person who could provide the necessary opinion letter. Therefore, no claim of fraud arises from these statements.

* * *

For the foregoing reasons, the motion to dismiss plaintiffs' fraud claims is granted.

II.    <u>Appeal from Magistrate Judge Reyes's Discovery Order</u>

a.    *Standard of Review*

In reviewing a magistrate's order on a pretrial matter that is not dispositive of a party's claim or defense, the district court will modify or set aside the order only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); <u>accord</u> Fed. R. Civ. P. 72(a); <u>Thomas E. Hoar, Inc. v. Sara Lee Corp.</u>, 900 F.2d 522, 525 (2d Cir. 1990). A decision is "clearly erroneous" when the court is, "'upon review of the entire record, [] left with the definite and firm conviction that a mistake has been committed.'" <u>McAllan v. Von Essen</u>, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (quoting <u>United States v. Snow</u>, 462 F.3d 55, 72 (2d Cir. 2006)) (alteration in original). "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." <u>Id.</u> (internal quotation marks omitted). Courts afford this board discretion in magistrates' resolution of discovery disputes. <u>Shipkevich v. Staten Island Univ. Hosp.</u>, No. 08-CV-1008 (FB)(JMA), 2012 WL 4442621, at *1 (E.D.N.Y. Sept. 25, 2012); <u>287 Franklin Ave.</u>

14

Residents' Ass'n v. Meisels, No. 11-CV-976(KAM)(JO), 2012 WL 1899222, at *3 (E.D.N.Y. May 24, 2012); Garcia v. Benjamin Grp. Enter. Inc., 800 F. Supp. 2d 299, 403 (E.D.N.Y. 2011). A party seeking to overturn a discovery order consequently "bears a heavy burden." Mental Disability Law Clinic v. Hogan, 739 F. Supp. 2d 201, 203–04 (E.D.N.Y. 2010).

      b.    *Judge Reyes's Order*

On February 15, 2013, plaintiffs sent a letter to Judge Reyes seeking to compel defendants to produce "[a]ll documents and communications with shareholders other than Plaintiffs" concerning restrictions on MarineMax stock. Dkt. #39, at 2. The letter also asked Judge Reyes to compel defendants to turn over "[t]elephone records evidencing all telephone communications or attempted telephone communications between or among the Individual Defendants concerning" plaintiffs' stock. Id., at 3. Defendants responded that communications with shareholders other than plaintiffs were not relevant to the question of whether defendants were liable for breach of contract for failing to lift the restrictions on plaintiffs' stock. Dkt. #40, at 3. Defendants argued that the request for phone records was overly broad and unduly burdensome, noting they already had agreed to turn over any notes or other memorialization of the contents of such calls and plaintiffs were permitted to ask about any such calls during depositions. Id., at 3. Defendants further stated that the volume of "raw phone records" between the individual defendants – who, according to defendants, speak regularly about the "day-to-day management of MarineMax" – would be enormous, and plaintiffs would have no practical way of discerning which of these calls related to their stock. Id. Judge Reyes issued an order on February 21, 2013, denying plaintiffs' motion to compel for the reasons argued in defendants' opposition letter. Dkt. #43.

15

Federal Rule of Civil Procedure 26 permits parties to obtain discovery related to any non-privileged matter that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Advisory Committee Note to the 2000 amendment to Rule 26(b)(1) states:

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.

Fed. R. Civ. P. 26(b)(1) advisory committee's note.  Accordingly, discovery "may not be used as a fishing expedition to discover additional instances of wrongdoing beyond those already alleged." Wells Fargo Bank, N.A. v. Konover, No. 3:05CV1924(CFD)(WIG), 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009) (internal quotation marks omitted).  "'The party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition.'" Id. (quoting Evans v. Calise, No. 92 Civ 8430 (PKL), 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)).  Rule 26(b)(1) "'does not allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" Id. (quoting Evans, 1994 WL 185696, at *1).

Here, plaintiffs made no prima facie showing before Judge Reyes that the discovery sought was relevant to any party's claim or defense.  First, with respect to communications with shareholders other than plaintiffs, plaintiffs' letter suggested this information was needed to show that (1) defendants' actions were part of an effort to frustrate the lifting of the stock restrictions; (2) plaintiffs were treated differently than other shareholders; and (3) defendants were aware of the legal requirements governing the lifting of stock restrictions.  The first issue, relating to defendants' motive, is, at best, relevant only to the scienter element of a fraud claim.

16

However, this matter is irrelevant to their claim for breach of contract, and, as discussed above, plaintiffs cannot make out a fraud claim. The second issue, the allegation that plaintiffs were treated differently than other shareholders, is not alleged in the second amended complaint, and is therefore outside the scope of relevant discovery. The third issue, defendants' knowledge of the applicable legal requirements, is not in dispute and, moreover, does not relate to an element of breach of contract. Accordingly, Judge Reyes committed no mistake in denying plaintiffs' motion to compel this information.

Second, with respect to telephone records, even if a document or record sought is otherwise relevant for purposes of discovery under Rule 26(b), a court must limit discovery thereof if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C); see Tucker v. Am. Int'l Grp. Inc., 281 F.R.D. 85, 95-96 (D. Conn. 2012) (denying request for search of defendant's emails where plaintiff obtained information relevant to her claims from other sources). Defendants have agreed to provide plaintiffs with information about any phone calls regarding their stock, and plaintiffs may depose defendants about any such phone calls. See Dkt. # 40, at 3. Consequently, even assuming the records of all telephone calls between and among the individual defendants are relevant, Judge Reyes did not abuse his discretion in denying plaintiffs' motion to compel these records as cumulative or duplicative.

As Judge Reyes's order was neither "clearly erroneous" nor "contrary to law," Fed. R. Civ. P. 72(a), plaintiffs' appeal of his decision is denied.

17

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' fraud claims is granted. Plaintiffs' appeal from Judge Reyes's February 21, 2013, discovery order is denied. The parties are directed to return to Judge Reyes for a settlement conference as soon as possible. If settlement cannot be reached, the court will adhere to an expedited trial schedule.

/s/(ARR)

Allyne R. Ross
United States District Judge

Dated: March 5, 2013
Brooklyn, New York

18