D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                    :

PAUL BARBARA, DIANE KENNEY, ANGELA      :      12-CV-368 (ARR)(RER)
CHIANESE, and MATTHEW BARBARA,          :

                                  :      <u>NOT FOR ELECTRONIC</u>
                Plaintiffs,           :      <u>OR PRINT PUBLICATION</u>
                                  :

      -against-                        :      <u>MEMORANDUM AND</u>
                                  :      <u>ORDER</u>
MARINEMAX, INC.                     :

                                  :
                Defendant.          :
                                  :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiffs object to an order of Magistrate Judge Ramon E. Reyes denying their motion to

compel production of certain documents. For the reasons explained below, I affirm in part and

remand in part, in light of the possible relevance of motive to plaintiffs' claim.

## BACKGROUND

I assume familiarity with the facts of the case from previous orders. Of relevance here,

plaintiffs served defendant with a second demand for documents on March 12, 2013. See Dkt.

#62, at 2. According to plaintiffs, defendant refused to produce documents in response to the

following demands:

> 1.     All documents and communications concerning a multi-million
>        dollar loan obtained by [MarineMax CEO William H.] McGill in
>        or about 2003, which came due, in part or in full, in 2007;
>
> 4.     All documents and communications related to non-privileged
>        recommendation, guidance or advice McGill and [MarineMax
>        CFO Michael H.] McLamb received regarding sale of their own
>        MarineMax stock in 2007, as well as MarineMax Board minutes in

1

>           which those sales or the possibility of those sales were discussed;
>           and
>
> 5.        All documents and communications relating to MarineMax
>           business plans or corporate strategy for the years 2006 to 2009.

Id. (alterations in original). Plaintiffs stated in a discovery conference with Judge Reyes, Dkt.

#59, at 14-15, 17-19, and repeat here, Dkt. #62, at 2-5, that the purpose of these documents is to

"show motive in proving allegations that MarineMax violated its explicit and implicit covenants

of good faith to abide by its contractual obligations," id. at 2. Judge Reyes succinctly

summarized his basis for denying plaintiffs' motion to compel production of the documents as

follows:

> I see motive as irrelevant and here's why.
>
> First, in her March 7th opinion and order Judge Ross indicated that the defendants'
> motive is at best, and I'm using her words, relevant only to the scienter element of
> a fraud claim. It's irrelevant to the plaintiffs' breach of contract. That's the first
> reason.
>
> Second reason is as I read the amended complaint and look at Judge Ross'
> decision, I see the breach of the covenant of good faith and fair dealing as
> virtually the same as the plaintiffs' breach of contract [claim]. So motive is
> irrelevant to breach of contract. New York law is clear on that. And the way the
> breach of contract claim is pled and has been construed by Judge Ross is either
> there was an expressed provision in a contract that required good faith efforts to
> lift the stock restriction or there was an implied provision in the contract. And so
> this is a breach of contract case, not a breach of the covenant of good faith and fair
> dealing the way I see it. So I'm inclined -- and motive is not relevant to breach of
> contract, so I'm inclined to deny the request.

Dkt. #59, at 13-14. Plaintiffs appeal Judge Reyes' ruling on the basis that, under Second Circuit

case law, motive can be relevant to a claim of breach of the implied covenant of good faith and

fair dealing. Dkt. #62, at 2 (citing cases).

## DISCUSSION

### I.    *Standard of Review*

In reviewing a magistrate's order on a pretrial matter that is not dispositive of a party's

claim or defense, the district court will modify or set aside the order only if it is "clearly

erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); accord Fed. R. Civ. P. 72(a); Thomas

E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990). A decision is "clearly

erroneous" when the court is, "'upon review of the entire record, [] left with the definite and firm

conviction that a mistake has been committed.'" McAllan v. Von Essen, 517 F. Supp. 2d 672,

678 (S.D.N.Y. 2007) (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)) (alteration

in original). "It is well-settled that a magistrate judge's resolution of a nondispositive matter

should be afforded substantial deference and may be overturned only if found to have been an

abuse of discretion." Id. (internal quotation marks omitted).

Federal Rule of Civil Procedure 26 permits parties to obtain discovery related to any non-

privileged matter that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The

Advisory Committee Note to the 2000 amendment to Rule 26(b)(1) states:

> The rule change signals to the court that it has the authority to confine discovery
> to the claims and defenses asserted in the pleadings, and signals to the parties that
> they have no entitlement to discovery to develop new claims or defenses that are
> not already identified in the pleadings.

Fed. R. Civ. P. 26(b)(1) advisory committee's note. Accordingly, discovery "may not be used as

a fishing expedition to discover additional instances of wrongdoing beyond those already

alleged." Wells Fargo Bank, N.A. v. Konover, No. 3:05CV1924(CFD)(WIG), 2009 WL 585430,

at *5 (D. Conn. Mar. 4, 2009) (internal quotation marks omitted). "'The party seeking discovery

3

must make a prima facie showing that the discovery sought is more than merely a fishing expedition.'" Id. (quoting Evans v. Calise, No. 92 Civ 8430 (PKL), 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). Rule 26(b)(1) "'does not allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" Id. (quoting Evans, 1994 WL 185696, at *1). Courts afford broad discretion in magistrates' resolution of discovery disputes. Shipkevich v. Staten Island Univ. Hosp., No. 08-CV-1008 (FB)(JMA), 2012 WL 4442621, at *1 (E.D.N.Y. Sept. 25, 2012); 287 Franklin Ave. Residents' Ass'n v. Meisels, No. 11-CV-976(KAM)(JO), 2012 WL 1899222, at *3 (E.D.N.Y. May 24, 2012); Garcia v. Benjamin Grp. Enter. Inc., 800 F. Supp. 2d 299, 403 (E.D.N.Y. 2011). A party seeking to overturn a discovery order consequently "bears a heavy burden." Mental Disability Law Clinic v. Hogan, 739 F. Supp. 2d 201, 203–04 (E.D.N.Y. 2010).

II.    *Relevance of Motive*

Before examining plaintiffs' discovery demands, I must correct something I said in a prior order. In my March 7, 2013 opinion and order I affirmed Judge Reyes' ruling that plaintiffs could not compel production of "[a]ll documents and communications with shareholders other than Plaintiffs," Dkt. #39, at 2, concerning stock restrictions. See Dkt. #52, at 16-17. Plaintiffs argued that such information was needed to show that defendant treated plaintiffs differently from other shareholders as part of an overall scheme to frustrate plaintiffs' efforts to sell their stock. Id. at 16. I rejected this argument in part because, I stated, motive "is irrelevant to [plaintiffs'] claim for breach of contract." Id. at 17.

This statement was in error and caused confusion. Although motive is, in general, irrelevant to a breach of contract claim, see Globe Refining Co. v. Landa Cotton Oil Co., 190

4

U.S. 540, 547 (1903) ("The motive for the breach commonly is immaterial in an action on the

contract."); Koufakis v. Carvel, 425 F.2d 892, 906 (2d Cir. 1970), plaintiffs' claim here is that

defendant breached the contract by failing to lift restrictions on plaintiffs' stock without a good

faith basis for doing so.  I held in my December 4, 2012 opinion and order that such a claim

could arise from the "Good Faith Efforts" clause of the contract, or from the covenant of good

faith and fair dealing implicit in every New York contract.  Dkt. #28, at 33-34.  Either way, an

allegation of bad faith is integral to plaintiffs' claim.  Moreover, because there is no contract

provision defining "good faith," the term is construed to have the same meaning it does in the

implied covenant context.  See 11 Samuel Williston & Richard A. Lord, A Treatise on the Law

of Contracts § 31:1 (4th ed. 1993) ("[T]echnical terms and words of art are to be given their

technical meaning when used in a transaction within their technical field, and by case law to the

effect that when words or terms having a definite legal meaning and effect are knowingly used in

a written contract, the parties will be presumed to have intended the words or terms to have their

proper legal meaning and effect, in the absence of any contrary intention appearing in the

writing.").  The court may therefore look to the case law regarding the implied covenant of good

faith to interpret the meaning of good faith in the contract.

　　　　Given that fact, plaintiffs are correct that under the Circuit's case law, motive may be

relevant when good faith is at issue.  See, e.g., Tractebel Energy Mktg., Inc. v. AEP Power Mktg.

Inc., 487 F.3d 89, 100 n.8 (2d Cir. 2007) ("The question here is not whether AEP breached the

express terms of the contract, but whether AEP acted in good faith; that is an issue entirely tied to

motive."); Travellers Int'l, A.G. v. Trans World Airlines, Inc. ("Travellers"), 41 F.3d 1570, 1577

(2d Cir. 1994) (considering "improper motive" in determining that promotional efforts of

defendants were not "guided by valid, good faith business judgments"); see also Carvel Corp v. Diversified Mgmt. Grp., 930 F.2d 228, 230 (2d Cir. 1991) ("This covenant includes an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.") (emphasis added) (internal quotation marks omitted); Paul v. Bank of Am. Corp., No. 09-CV-1932 (ENV)(JMA), 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011) ("[T]he implied covenant of good faith will not be breached without some showing of intent to harm the other contracting party or a reckless disregard of it."). Accordingly, to the extent my March 7, 2013 opinion and order relied on the proposition that motive is irrelevant to breach of contract, that holding was incorrect in its application to plaintiffs' claim.

Because plaintiffs' claim involves an allegation of bad faith, motive may be a relevant subject of discovery. I note that this decision does not open the floodgates to all evidence of bad or selfish acts on the part of defendant. Rather, motive is a relevant subject for discovery only to the extent that it is relevant to a claim or defense: in this case, if it supports an inference that defendant's failure to lift the stock restrictions was without a good faith basis. Having set forth the new parameters of relevant discovery, I turn to plaintiffs' specific document requests.

III.  *Reconsideration of March 7, 2013 Opinion & Order as to Motive Evidence*

First, these new parameters for discovery occasion a reconsideration of the portion of my March 7, 2013 opinion and order upholding Judge Reyes' denial of plaintiffs' motion to compel. Plaintiffs made the following document demand on January 25, 2013:

> All documents and communications with shareholders other than Plaintiffs concerning Rule 144 or 144A restrictions on MarineMax stock, including but not limited to written representations, explanations or discussions concerning Rule

6

> 144 or 144A restrictions, communications to or from transfer agents concerning Rule 144 or 144A restrictions, communications concerning lifting Rule 144 or 144A restrictions and selling or transferring MarineMax stock.

Dkt. #43, at 2. Given the potential relevance of motive, I cannot now say that this request is necessarily outside the scope of relevant discovery. The request seeks information regarding restrictions on stock and whether defendant singled out plaintiffs' stock for differential treatment. Such information could provide evidence that might support an inference of bad faith with respect to plaintiffs' stock. I make no determination about whether such evidence would ultimately be relevant, let alone sufficient, to support such an inference. Nor do I decide whether the scope of the demand is appropriately tailored to the relevant inquiry. Instead, I remand to Judge Reyes to reconsider this request in light of the clarifications I have made and to determine the scope of relevant discovery.

IV. *Application to the Instant Document Demands*

I now consider the documents demands that are the subject of this appeal.

> (a) All documents and communications related to non-privileged recommendation, guidance or advice McGill and [MarineMax CFO Michael H.] McLamb received regarding sale of their own MarineMax stock in 2007, as well as MarineMax board minutes in which those sales or the possibility of those sales were discussed.

Dkt. #62, at 2.

I first address this document demand because it illustrates how motive evidence, while potentially relevant, is potentially relevant only in a limited way. Plaintiffs' argument throughout this litigation has been that during the period in which plaintiffs' stock was restricted in violation of the contract, defendant's corporate officers, McGill and McLamb, profited by selling their own stock based on material inside information. This argument raises the specter of a bad act –

insider trading – that occurred around the same time defendant's failure to lift restrictions on

plaintiffs' stock. But the temporal proximity of bad acts and the alleged breach of contract does

not itself support an inference of bad faith. The relevance of the requested discovery is instead

dubious for several reasons:

First, to the extent plaintiffs are seeking to revive their claim of breach of fiduciary duty

based on insider trading through this discovery request, I dismissed that claim in my December 4,

2012 opinion and order. See Dkt. #28, at 24-28. Moreover, insider trading is irrelevant to

plaintiffs' claim that defendant breached its duty of good faith. Plaintiffs' claim is that McGill

and McLamb destroyed the value of the contract for plaintiffs because their sales drove down the

stock price. But the impact of the sales on the stock price is wholly independent of whether those

sales were unlawful. Any large sale, whether proper or improper, could have led to a diminution

in the stock price. An investigation of whether McGill and McLamb's sales were based on

material inside information is therefore beyond the scope of relevant discovery.

Second, McGill and McLamb's respective decisions to sell their own stock is of

questionable relevance since the contract imposed no obligation on MarineMax principals to wait

until plaintiffs had sold off their stock before engaging in any sales of their own. Had such a

sweeping obligation been intended, it is unreasonable to suppose that it would not have been

included in the express terms of the contract. The implied covenant of good faith could not

impose such an obligation because the implied covenant "'does not add to the contract a

substantive provision not included by the parties.'" Dorset Indus., Inc. v. Unified Grocers, Inc.,

893 F. Supp. 2d 395, 406 (E.D.N.Y. 2012) (quoting Broder v. Cablevision Sys. Corp., 418 F.3d

187, 199 (2d Cir. 2005)). The contract thus imposed no constraint on McGill and McLamb with

respect to sale of their own shares. Suppose, for example, McGill and McLamb had sold their stock sometime within the one year holding period that plaintiffs concede was contemplated by the contract. That sale too could have driven down the stock price. Such a sale could not constitute a breach of the duty of good faith to plaintiffs, however, since defendant was under no obligation to lift the restrictions on plaintiffs' stock prior to the expiration of the holding period. The mere fact that McGill and McLamb sold their stock before plaintiffs did does not, therefore, support an inference of bad faith.

Finally, to the extent plaintiffs intend to use McGill and McLamb's stock sales as evidence that these individuals were acting out of self-interest, that fact, without more, does not support an inference of bad faith. In general, a party does not violate the covenant of good faith and fair dealing solely "by acting in its own self-interest consistent with its rights under the contract." Suthers v. Amgen Inc., 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006). To the contrary: courts expect that parties will be guided by self-interest to enter into mutually beneficial contracts in the first place. See, e.g., Travellers, 41 F.3d at 1577. The contract does not extinguish each party's right to act in its own self-interest, so long as its acts do not violate the covenant of good faith and fair dealing. But although a covenant of good faith exists in every contract (whether expressed or implied), "a court may not construe the covenant to 'undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" Dorset Indus., 893 F. Supp. 2d at 406 (quoting M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990). On the other hand, self-interest may be an improper motive when it is part of a larger purpose to injure the other party. See, e.g., Travellers, 41 F.3d at 1577 (holding that implied covenant was breached when defendant attempted to maximize its

profits <u>by</u> eliminating plaintiff from joint venture); <u>see also</u> <u>Dunkin' Donuts Franchised Rests.,</u>

<u>LLC, v. Grand Cent. Donuts, Inc.,</u> No. CV 2007-4027(ENV)(MDG), 2009 WL 1750348, at *2-3

(E.D.N.Y. June 19, 2009).  But self-interest, without more, will not support an inference of bad

faith.  "[E]ven after you have a signed a contract, you are not obliged to become an altruist

toward the other party."  <u>Fasolino Foods Co. v. Banca Nazionale del Lavoro,</u> 961 F.2d 1052,

1057 (2d Cir. 1992) (alteration in original) (quoting <u>Mkt. St. Assocs. Ltd. P'ship v. Frey,</u> 941

F.2d 588, 594 (7th Cir. 1991)) (internal quotation marks omitted).  The mere fact that McGill and

McLamb profited from selling their own stock, even assuming the value of plaintiffs' stock was

incidentally diminished, does not mean they acted in bad faith.  Plaintiffs' request for "[a]ll

documents and communications" relating to McGill and McLamb's "sales or the possibility of

those sales," Dkt. #62, at 2, therefore seeks information outside the scope of relevant discovery.

Finding this demand overbroad, I affirm Judge Reyes' decision to deny plaintiffs' motion

to compel the requested documents.

> (b)     All documents and communications concerning a multi-million
>         dollar loan obtained by [MarineMax CEO William H.] McGill in
>         or about 2003, which came due, in part or in full, in 2007.

Dkt. #62, at 2.

Plaintiffs state that McGill "admitted in his Interrogatory responses and during his

February 28, 2013 deposition that he planned to sell $7.5 million of MarineMax stock in May

and June, 2007 to meet a loan obligation that was due and owing around that time."  Dkt. #62, at

3.  They argue that more information about the loan is needed to determine "the scope of the

motive he had to direct or assist in blocking Plaintiffs' sale of their MarineMax stock."  <u>Id.</u> at 4.

This vague rationale will not support the discovery request.  I agree that the loan may be relevant

to motive, in that it may show that McGill had a motive to sell his stock that was <u>unrelated</u> to plaintiffs.  In other words, McGill's testimony about the loan may provide evidence of good faith to rebut plaintiffs' allegations of breach.  As a result, plaintiffs may need further discovery to verify the existence of the loan and any relevant terms thereof.  But plaintiffs have not articulated a basis for discovering more information about the loan that would add relevant evidence to support their claim and would not amount to a fishing expedition.  Therefore, I affirm Judge Reyes's decision to deny plaintiffs' motion to compel based on their stated rationale.

> (c)    All documents and communications relating to MarineMax
>        business plans or corporate strategy for the years 2006 to 2009.

Dkt. #62, at 2.

This request is utterly vague and overbroad.  Plaintiffs justify it primarily with reference back to "McGill's and . . . McLamb's motives for selling their stock and obstructing Plaintiffs' efforts to sell their stock," <u>id.</u> at 5, which, as discussed, is of dubious relevance.  Plaintiffs further state that MarineMax had a business plan that was prepared each year, and that their business strategy "presumably included efforts to protect MarineMax's stock price."  <u>Id.</u>  This statement could be made about any company, and does nothing to support an inference of bad faith (not to mention that plaintiffs as shareholders would benefit by the company's efforts to protect the stock price).  Even with consideration of motive, therefore, this request is overbroad.  Judge Reyes' decision to deny the request was not "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).

11

## CONCLUSION

For the foregoing reasons, I affirm Judge Reyes' decisions with respect to (1) McGill and McLamb's sale of their own stock; (2) McGill's loan; and (3) plaintiffs' demand for defendant's business plan and corporate strategy. I remand plaintiffs' requests for discovery related to communications with other shareholders concerning stock restrictions for reconsideration in light of the principles discussed herein. The parties should discuss with Judge Reyes any additional discovery that may be needed in light of this order. If necessary, the trial date may be postponed accordingly.

SO ORDERED.

s/ ARR

Allyne R. Ross
United States District Judge

Dated: May 9, 2013
Brooklyn, New York

12